**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 7, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PEGGY HAMBY,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

      Defendant-Appellee.

No. 07-5051
(D.C. No. 05-CV-609-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **HOLLOWAY**, and **SEYMOUR**, Circuit Judges.

---

Plaintiff Peggy Hamby appeals from a district court order affirming the

Social Security Commissioner's decision to deny her application for social

security disability benefits. Exercising our jurisdiction under 42 U.S.C. § 405(g)

and 28 U.S.C. § 1291, we reverse.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Ms. Hamby, an office worker, applied for disability insurance benefits on June 21, 2001, alleging disability since December 31, 1997, due to several medical problems, including obesity, "acid reflux, hypertension, osteoarthritis, nerves, horseshoe kidney, kidney stones (chronic)," bone problems in both feet, and hypertension "caus[ing] dizziness [and] severe headaches." Admin. R. at 98. After a November 26, 2002, hearing, an administrative law judge (ALJ) determined that Ms. Hamby was not disabled at step four of the sequential evaluation process. *See* 20 C.F.R. § 404.1520.[1] The ALJ found that she retained

---

[1]     As this court has explained:

> The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Step one requires the claimant to demonstrate that [s]he is not presently engaged in substantial gainful activity. At step two, the claimant must show that [s]he has a medically severe impairment or combination of impairments. At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits. If a claimant cannot meet a listing at step three, [s]he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents [her] from performing [her] past work.
>
> If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience.

(continued...)

the residual functional capacity (RFC) to perform her past relevant work despite her severe impairments. On judicial review, a magistrate judge, ruling by consent of the parties, determined that the ALJ failed to provide a sufficient evaluation of Ms. Hamby's ability to perform her past relevant work. He therefore remanded the matter to the agency for further administrative proceedings.

On remand, another ALJ held a hearing and issued a decision again finding that Ms. Hamby is not disabled at step four. Alternatively, the second ALJ decided that Ms. Hamby is not disabled at step five because she could perform other work that exists in significant numbers in the national economy. Ms. Hamby sought judicial review of the denial of benefits. In the district court, a second magistrate judge affirmed. Ms. Hamby now appeals that decision.

II.

**Medical record**

Ms. Hamby's medical record reflects multiple health problems. She is obese, with elevated blood pressure and "mild coronary artery disease," Admin. R. at 392. She has frequently complained of foot, hip, knee, and back pain; headaches; shortness of breath; dizziness; palpitations; fatigue; and chest discomfort. Also, Ms. Hamby has a genetic abnormality called horseshoe kidney,

---

[1](...continued)
*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and internal quotation marks omitted).

which makes her susceptible to kidney-stone formation. In December 2000, she underwent a surgical procedure for removal of a kidney stone.

**Hearing testimony**

At the remand hearing on June 16, 2005, Ms. Hamby testified about pain in her knees, feet, and back; headaches and dizziness from hypertension; drowsiness from medication; intermittent symptoms from acid reflux disease; incontinence; and her kidney condition. She also said that she has a "damaged" heart. *Id.* at 439. Although she feels anxious, she is no longer on anxiety medication. She uses a nonprescription cream for joint pain and takes Darvon, an opioid analgesic that makes her drowsy. For hypertension, she takes prescription medications and must avoid anti-inflammatories that could relieve her joint pain.

In describing her activities, Ms. Hamby related that she does very little housework, watches some television, visits her mother, and goes to church twice a week. She takes a nap "almost every day" and frequently dozes off. *Id.* at 443-46. She does not "stand hardly at all" and walks only in the house. *Id.* at 446. She uses a four-post cane because Dr. Johnson, a treating physician, told her "[t]o use it as needed," and without it she must hold onto the walls. *Id.* at 447-48. Ms. Hamby can lift a half-gallon of milk but cannot carry it. Both Ms. Hamby and her daughter testified that she has a frequent, urgent need to use the bathroom.

A vocational expert (VE) testified that Ms. Hamby's previous jobs of church secretary, receptionist, and data entry clerk may be classified as sedentary and either skilled or semi-skilled.[2] The ALJ described a hypothetical female, fifty-one years old (Ms. Hamby's age at the last-insured date), with Ms. Hamby's work background, with fifteen years of education, with a good ability to read, to write, and to use numbers, needing "to change position from time to time to relieve her symptomatology," limited to sedentary work (lifting and carrying ten pounds and standing and walking two hours and sitting six hours in an eight-hour day), and in mild to moderate chronic pain but with the ability to remain attentive and responsive. *Id.* at 455-56. He then asked the VE whether this hypothetical woman could return to her past relevant work or perform other jobs in the national and regional economy. The VE testified that the hypothetical individual could perform her previous jobs and had transferable skills allowing her to

---

[2] In her appellate brief, Ms. Hamby notes discrepancies between the job titles applied in the first and second ALJ proceedings. [Aplt. Br. at 31-32]. The first decision stated that the VE considered Ms. Hamby's past relevant work to be telephone sales and data entry clerk, which are semi-skilled and sedentary positions. [Admin. R. at 25]. As stated above, the second decision classified Ms. Hamby's past relevant work as church secretary, receptionist, and data entry clerk. In light of our disposition of this appeal, we need not speak definitively regarding the implications of these apparent discrepancies. We note, however, that the inconsistencies are not necessarily indicative of error, although the ALJ may wish to provide a clarification of Ms. Hamby's job titles on remand. At the same time, the ALJ may receive additional testimony on whether Ms. Hamby's part-time work as church secretary qualified as past relevant work and also on the exertional demands of the data-entry-clerk position.

perform other jobs existing in significant numbers in the national and regional economy.

The ALJ then posed a series of questions based on an assumption that Ms. Hamby's testimony was "credible and substantially verified by third-party medical evidence." *Id.* at 459. The ALJ added requirements, such as easy access to restrooms and permission to take a one to two-hour nap, along with limitations, such as an inability to withstand stress, sit more than thirty minutes at a time, stand more than five to ten minutes, and a propensity to doze off. The VE generally responded that a hypothetical person with those requirements and restrictions could not keep any job.

**ALJ decision**

The ALJ first concluded that Ms. Hamby had "problems with obesity, stomach, hypertension, kidney, back, feet, hiatal hernia, anxiety, vision, knee, heart, headaches, shoulder, hands, wrists and hip, which could place substantial limitation . . . upon [her] basic work activities." *Id*. at 330-31 (citing 20 C.F.R. § 404.1521, which provides examples of "basic work activities, . . . the abilities and aptitudes necessary to do most jobs"). Without further describing these impairments, the ALJ found generally that Ms. Hamby had "a severe impairment by Social Security definition" at step two of the sequential evaluation process. *Id*. at 331. This step-two determination was the ALJ's last specific reference to most of Ms. Hamby's medical problems. Proceeding to step three, the ALJ

determined that Ms. Hamby's impairments, considered singly or jointly, did not meet or equal a listing.

At step four, the ALJ discussed portions of the medical record and discounted much of Ms. Hamby's testimony. Concerning Ms. Hamby's daily activities, the ALJ selectively recited her testimony and related that she drives two miles a week, attends church twice a week, visits her mother, and does some household chores. The ALJ did not mention Ms. Hamby's stated drowsiness and incontinence issues. He acknowledged that Ms. Hamby expressed a "plethora of subjective complaints," but was "persuaded that the degree of pain alleged to be disabling cannot be found as fact." *Id.* at 334.

The ALJ decided that Ms. Hamby has the RFC to perform a wide range of sedentary work: lifting and carrying ten pounds, standing or walking two hours and sitting six hours in an eight-hour workday, and occasionally stooping. With these restrictions, according to the ALJ, Ms. Hamby could perform her past relevant work. Also, the ALJ found she had transferable skills and the RFC to perform other jobs available in the regional and national economy. At both steps four and five, the ALJ determined that Ms. Hamby "is not under a 'disability' as defined in the Social Security Act." *Id.* at 337. On judicial review, a magistrate judge affirmed. This appeal followed.

III.

This court "determine[s] whether the ALJ's decision is free from legal error and supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006) (internal quotation marks omitted). "[W]e meticulously examine the record as a whole," *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005), but "we neither reweigh the evidence nor substitute our judgment for that of the agency," *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

Ms. Hamby's fundamental issue on appeal is that the ALJ's RFC findings are not supported by substantial evidence and do not comply with the applicable legal standards. A closely related argument is that the RFC findings are flawed because the ALJ failed to make a proper credibility determination. "RFC is what an individual can still do despite . . . her functional limitations and restrictions caused by . . . her medically determinable . . . impairments." Soc. Sec. R. 96-9p, "Titles II and XVI: Determining Capability to Do Other Work–Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work," 1996 WL 374185, at *1. "In determining a claimant's [RFC], the ALJ should first assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis." *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996)

(internal quotation marks and alterations omitted). He must "consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar,* 468 F.3d at 621.

In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work. On judicial review, the magistrate judge attempted to fill in the evidentiary analysis, but post-hoc rationalizations are insufficient. *Grogan*, 399 F.3d at 1263.[3]

In particular, the ALJ failed to give adequate consideration to the effect of Ms. Hamby's obesity in combination with her other severe impairments. The agency "will not make assumptions about the severity or functional effects of obesity combined with other impairments" because "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. R. 02-1p, "Titles II and XVI: Evaluation of

---

[3] The magistrate judge relied heavily on the opinion of Dr. Williams, which was submitted after the close of the hearing and not mentioned in the ALJ's decision. "[C]ourt[s] may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue,* 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should have been evaluated based solely on the reasons stated in the decision.").

Obesity," 2000 WL 628049, at *6. Each case will be evaluated "based on the information in the case record." *Id.* In spite of the teachings of SSR 02-1p, the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments.

Also, the ALJ's RFC determination is based in large part on his conclusion that Ms. Hamby exaggerated her subjective complaints and did not present "a picture of a person suffering from chronic, severe, unrelenting pain." Admin. R. at 334. While a claimant's credibility is generally an issue reserved to the ALJ, the issue is reviewable to ensure that the underlying factual findings are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation marks omitted). As part of the RFC evaluation process, the ALJ must take into account any subjective allegations "which can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(3). He should give careful consideration to "[t]he location, duration, frequency, and intensity of . . . pain or other symptoms"; "[p]recipitating and aggravating factors"; "type, dosage, effectiveness and side effects of any medication"; "[t]reatment, other than medication," for pain relief; and the claimant's "daily activities." *Id.*

In analyzing Ms. Hamby's recounted symptoms, the ALJ looked to her daily activities (which were minimal); a determination that she took no "narcotic based

-10-

pain relieving medications" (even though she did take Darvon), and sought only conservative treatment for her foot problems and acid reflux. Admin. R. at 333-34. The ALJ did not even make a perfunctory comment on the testimony of Ms. Hamby and her daughter relating to incontinence; or on Ms. Hamby's additional testimony concerning medication side effects limiting her ability to concentrate, drowsiness, use of an assistive device, and the need to alternate standing and sitting. Thus, in finding Ms. Hamby only partially credible, the ALJ applied incorrect legal standards and failed to articulate his reasoning with sufficient specificity. The legal flaws in the ALJ's RFC determination and his corresponding credibility findings means that the denial of benefits cannot be affirmed.

IV.

"When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala,* 992 F.2d 1056, 1060 (10th Cir. 1993). "Some of the relevant factors we consider are the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar,* 468 F.3d at 626 (citation, internal quotation marks, and alteration omitted). On the record before us, we are not convinced that a

-11-

remand would be an exercise in futility. We therefore reject Ms. Hamby's request for an immediate award of benefits.

The judgment of the district court is REVERSED and the case is REMANDED to the district court, with instructions to remand to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge