Maria M. DIAZ, Appellant

v.

COMMISSIONER OF SOCIAL
SECURITY.

No. 08–4067.

United States Court of Appeals,
Third Circuit.

Argued May 22, 2009.

Filed: Aug. 12, 2009.

Abraham S. Alter, Esq. [ARGUED] Langton & Alter, Rahway, NJ, for Appellant.

Karla J. Gwinn, Esq. [ARGUED] Social Security Administration, Office of General Counsel–Region II, New York, NY, for Appellee.

Before RENDELL, STAPLETON and ALARCÓN *, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Maria Diaz ("Diaz") appeals from the Memorandum and Order of the District Court concluding that the decision of the Administrative Law Judge ("ALJ") denying her Social Security disability insurance benefits was supported by substantial evidence. While the ALJ gave serious consideration to her claim and issued a thoughtful nine-page opinion, we are compelled to vacate the District Court's Order and remand to the District Court, directing it to remand this case to the Commissioner of Social Security (the "Commissioner") for further consideration.

## I.

Diaz seeks a finding of disability as of December 31, 2000, when she was 40 years old. She turned 45 in July 2005, and her age category changed to "closely approaching advanced age," so that she became "disabled" under section 1614(a)(3)(A) of the Social Security Act as of July 1, 2005. It is the period between 2000 and 2005 that thus concerns us.

Diaz was last employed in 2000 as a babysitter. She stopped working on December 31, 2000, because she "could not keep bending down and assisting the children's needs." Administrative Record ("AR") 133. Diaz urges that several medical conditions—scoliosis, diabetes, cholesterol, asthma, high arterial blood pressure,

* Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

and arthritis—prevent her from standing for a long period of time and contribute to headaches, asthma attacks, and chest pains. In addition, she is 4'11" tall, weighs 252 lbs., and has been diagnosed as morbidly obese. Diaz has been under the care of Dr. Diptika Patel, who prescribed several medications for her ailments.

At the hearing before the ALJ, Diaz testified that she was unable to work at a job that requires her to stand, and that she could walk only half a block, due to back and leg pain. She testified that her pain was most acute in the region between her hip and left knee, and described frequent swelling in her knees and ankles. Further, she indicated that she could sit for "about half an hour[,]" and that she needs to take "shifts between sitting and standing." AR 36, 40.

The ALJ considered evidence presented by numerous doctors concerning Diaz's physical and mental limitations. He also considered vocational evidence provided by Rocco Meola, a vocational rehabilitation counselor. Meola indicated that a person like Diaz (who is between 40 and 45 years of age with limited education and unable to speak English) could perform certain sedentary occupations, including small parts assembler, parts sorter, parts inspector, inspector, and weight tester, if provided periodic breaks, and that approximately 1,500 jobs of this type existed in the region.

The ALJ proceeded through the five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ concluded that Diaz was not engaged in substantial gainful activity. The ALJ then proceeded to step two. At step two, the ALJ considered whether Diaz had a medically determinable impairment that is "severe" or a combination of impairments that is "severe." He listed her "severe" impair-

ments as follows: diabetes, hypertension, asthma, back disorder, degenerative joint disease of the knee, adjustment disorder, and obesity.

The ALJ then discussed Diaz's mental impairments, indicating that the opinion of the state agency medical consultant (who assessed her as having a "severe impairment" because she has moderate difficulty maintaining concentration, persistence, and pace) "did not appear to be supported, because of her activities of daily living and lack of psychiatric treatment." AR 42. Nonetheless, the ALJ stated that "giving the claimant every benefit of the doubt, I find her adjustment disorder t[o] constitute a 'severe' impairment." AR 18. The mental condition was the sole impairment discussed by the ALJ at step two. The ALJ then proceeded to step three.

At step three, an ALJ is charged with determining whether a claimant's impairment or combination of impairments meets, or medically equals, the criteria of an impairment listed in 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment, or combination of impairments, meets or equals the criteria of the Listing and meets the duration requirement, the claimant qualifies as disabled. Here, at step three, the ALJ commented on Diaz's individual impairments: her diabetes, hypertensive cardiovascular disease, chronic pulmonary insufficiency and asthma, disorder of the spine, joint dysfunction, and mental capacity. The ALJ emphasized that Dr. Martin Fechner, the court-appointed medical expert, testified that Diaz did not meet or equal any Listing.

The ALJ then reviewed the evidence presented, including the testimony of various experts, and concluded that Diaz "has the residual functional capacity to perform simple, routine sedentary work that does not require concentrated exposure to pulmonary irritants and never requires crawling or the climbing of ropes or ladders."

AR 19. In so concluding, the ALJ assigned "[c]ontrolling weight" to the "very detailed reports of the examinations conducted by Drs. Merlin, Potashnik, and Tiersten." AR 20.

The District Court affirmed.[1]

## II.

■ Congress has provided that our review of the Commissioner's determination of disability benefits is for substantial evidence. 42 U.S.C. § 405(g). If supported by substantial evidence in the record, we are bound by the ALJ's findings of fact. *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Id.* (citing *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995)).

■ In order to establish a disability under the Social Security Act, Diaz must demonstrate some " 'medically determinable basis for an impairment that prevents her from engaging in any "substantial gainful activity" for a statutory twelve-month period.' " *Burnett v. Comm'r of Social Sec. Admin.,* 220 F.3d 112, 118 (3d Cir.2000) (quoting *Plummer,* 186 F.3d at 427); *see also* 42 U.S.C. § 423(d)(1). Diaz will be considered unable to engage in any substantial gainful activity " 'only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.' " *Burnett,* 220 F.3d at 118 (quoting *Plummer,* 186 F.3d at 427–28).

■ On appeal, Diaz urges that the ALJ's ruling is not supported by substantial evidence because, contrary to Social Security Ruling ("SSR") 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000), no consideration was given to Diaz's severe obesity. The ALJ acknowledged this impairment at step two, but failed to consider its impact, in combination with her other impairments, at step three, as required. In 2000, the Commissioner rescinded Paragraph 9.09 of the Listing of impairments, which dealt exclusively with obesity; however, this did not eliminate obesity as a cause of disability. To the contrary, the Commissioner promulgated SSR 00–3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a Listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant: "We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." Although SSR 00–3p was superseded by SSR 02–1p, 67 Fed.Reg. 57859, 57859 (Sept. 12, 2002), SSR 02–1p did not materially amend SSR 00–3p. *See Rutherford v. Barnhart,* 399 F.3d 546, 552 n. 4 (3d Cir.2005). SSR 00–3p instructs that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."[2]

---

**1.** The District Court exercised jurisdiction under 42 U.S.C. § 405(g), and this Court has jurisdiction over Diaz's appeal pursuant to 28 U.S.C. § 1291.

**2.** For example, the Ruling notes:
The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have

Hence, an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step.

█ In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

Citing *Rutherford v. Barnhart*, the government urges that the "ALJ's adoption of their [Drs. Merlin, Potashnik, Tiersten, and Fechner's] conclusions constitutes a satisfactory, if indirect, consideration of that condition [obesity]." Respondent's Br. at 29; *see* 399 F.3d at 552. Significantly, however, in *Rutherford*, the claimant did not assert obesity as an impairment, nor did the ALJ note, or discuss, it. On appeal, Rutherford urged that the ALJ was required to consider her obesity explicitly and, therefore, remand of the case was required. We noted that the references to obesity in the doctors' reports were sufficient to put the ALJ on notice of the impairment, which was factored indirectly, although not explicitly, in the ALJ's

determination. We then concluded that Rutherford's claim would fail in any event, because Rutherford never argued that her obesity impacted her job performance.

Here, by contrast, Diaz asserted—and the ALJ specifically determined—that Diaz's obesity constituted a severe impairment. Further, we cannot conclude, as we did in *Rutherford*, that Diaz's obesity had no impact, alone or in combination with her other impairments, on her workplace performance. To the contrary, Diaz's morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis. *See Clifford*, 227 F.3d at 873 (noting significant relationship between obesity and severe arthritis of the knees). SSR 02–1p also underscores the interplay between obesity and joint dysfunction, mobility, and musculoskeletal function. Although in *Rutherford* we expressed some willingness to view the reference to the reports of the claimant's examining physicians as constituting adequate, implicit treatment of the issue by the ALJ, we decline to do so here, where Diaz's obesity was urged, and acknowledged by the ALJ, as a severe impairment that was required to be considered alone and in combination with her other·impairments at step three.

█ Accordingly, the District Court's critical determination—that the ALJ's citation of reports by doctors who were aware of Diaz's obesity sufficed—was error. Were there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function.[3] In

---

limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also effect ability to do postural functions, such as climbing, balance, stooping, and crouching.
SSR 02–1p.

3. *See, e.g., Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir.2009) (remanding where obesity was noted as a severe impairment, because the "ALJ failed to analyze the combined effect of Villano's obesity and her other impairments[,]" including arthritis in her right knee); *Celaya v. Halter*, 332 F.3d 1177, 1182

*Burnett,* we remanded to the ALJ where his summary conclusion omitted any explanation or reasoning. 220 F.3d at 119–20. We must vacate and remand here as well. Surely the ALJ, having recognized obesity as an impairment, should determine in the first instance whether, and to what extent, Diaz's obesity, in combination with her asthma, diabetes, arthritis, back pain, and hypertension, impacted her workplace performance.[4] *See INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

Diaz also objects to the ALJ's assignment of controlling weight to three consultative examinations, over an opinion offered by Dr. Fahreet Noor, a physician with the New Jersey Division of Disability Determination Services, who testified regarding Diaz's arthritis. The three doctors relied upon by the ALJ—Drs. Merlin, Potashnick, and Tiersten—issued fairly perfunctory reports after brief exams and noted Diaz's successful navigation of the examining table. Dr. Noor, on the other hand, noted severe arthritic changes, and limited range of motion, in Diaz's knees. AR 252.

■ In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another. *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981). However, "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give

(9th Cir.2002) ("Given the potential effect of obesity on these conditions [diabetes and hypertension], the ALJ had a responsibility to consider their interactive effect."); *Clifford v. Apfel,* 227 F.3d 863, 873 (7th Cir.2000) (remanding to the ALJ to "adequately develop the record and, if necessary, obtain expert opinions" because "the record does not indicate that the ALJ properly considered the aggregate effect of all Clifford's ailments [including obesity]"); *Scott v. Heckler,* 770 F.2d 482, 487 (5th Cir.1985) (remanding because the ALJ failed to "consider[ ] the combination or 'cumulative impact' of all of Scott's [claimant's] physical problems[,]" including obesity); *see also Hamby v. Astrue,* 260 Fed.Appx. 108, 112 (10th Cir.2008) (remanding because the ALJ "failed to give adequate consideration to the effect of Ms. Hamby's obesity in combination with her other severe impairments," and because "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments."); *Kennedy v. Astrue,* 247 Fed.Appx. 761, 768 (6th Cir.2007) (remanding because the "record contains nothing to indicate that any effort was made to determine what, if any, effect Kennedy's [claimant's] obesity has on her current level of physical functioning"); *Petersen v. Barnhart,* 213 Fed. Appx. 600, 605 (9th Cir.2006) (remanding to agency to "develop the factual record necessary to determine the impact of Petersen's

[claimant's] obesity" because the ALJ did not discuss claimant's obesity and thus failed "to determine the effect of a[the] claimant's obesity on her other impairments, as well as its effect on her overall health and ability to work, given the existence of other impairments."); *cf. Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) ("In determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.").

4. In *Rutherford,* we cited as support for our decision an opinion of the Seventh Circuit court of appeals, *Skarbek v. Barnhart,* 390 F.3d 500 (7th Cir.2004) (per curiam). There, as in *Rutherford,* the ALJ did not discuss, much less determine, whether the claimant's obesity constituted a severe impairment. Here, by contrast, the ALJ specifically determined that Diaz's obesity constituted a severe impairment. Accordingly, the situation here more closely resembles the facts in a subsequent decision of the Seventh Circuit court of appeals, *Villano,* 556 F.3d at 561–63. There, the court remanded because the ALJ—despite identifying the claimant's obesity as a severe impairment—failed to analyze the cumulative impact of this condition and her other impairments, including arthritis in her right knee.

some reason for discounting the evidence she rejects." *Plummer,* 186 F.3d at 429 (internal citation omitted).

■ Here, Dr. Noor observed that Diaz had "crepitus," and Dr. Fechner noted that this audible "crunching of the bone against bone" reflected fairly severe arthritis. AR 44. Although the government maintains that Dr. Fechner was critical of Dr. Noor's detection of crepitus, which was not based on an x-ray or MRI of Diaz's knee, the ALJ does not mention, much less analyze, Dr. Fechner's comments. AR 43–44.[5]

The ALJ's dismissal of Dr. Noor's diagnosis—without explanation—is particularly troubling, because Dr. Patel, Diaz's treating doctor, as well as the physicians upon whom the ALJ relied, documented Diaz's arthritis. Dr. Patel repeatedly notes Diaz's swollen legs, arthritis, and complaints of joint pain in her knees. AR 301, 303, 318–19; *see Plummer,* 186 F.3d at 429 (quoting *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir.1987)) (noting that "[t]reating physician's reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time' "). Dr. Merlin also observed a "history of arthritis," albeit one that was stable. AR 265. Dr. Potashnick's examination notes, similarly, reflect Diaz's complaints about pain in her left knee—complaints that were substantiated by Potashnick's examination findings. AR 373–75. Although he found no crepitus, Dr. Potashnick specifically noted that the "left knee was tender on palpation of patellofamoral joint"; that

Diaz had a "[l]ongstanding history of lower back and left knee pain"; and that an "[e]xamination findings are supportive of left knee arthritis." AR 375. Dr. Miranda found, moreover, that Diaz's complaints of pain in multiple joints and back due to arthritis were substantiated by the x-ray and clinical evidence in the record. AR 8. In fact, Dr. Tiersten alone found no "joint effusion, inflammation, or instability." AR 385.

In short, while the ALJ may certainly credit the opinions of certain doctors over others, here Dr. Noor's diagnosis of severe arthritis was supported by probative evidence in the record. Yet, the severity of her arthritis and her significant joint pain were downplayed by the ALJ. On remand, the ALJ should reconsider this condition, and its severity, alone and in combination with her other impairments, including obesity.

### III.

In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. However, there are cases where we cannot ascertain whether the ALJ truly considered competing evidence, and whether a claimant's conditions, individually and collectively, impacted her workplace performance. This is one such case.

Accordingly, we will VACATE the Order of the District Court and REMAND to the

---

5. In any event, Dr. Fechner testified that a knee x-ray, while helpful, is not necessary to detect crepitus:

> Dr. Noor (phonetic) said there were, well he said moderate to severe arthritic changes in the knees, I don't know, I don't see where he's looking at an x-ray, but he found market crepitis [sic], both knees and

ankles. Crepitis [sic] is when you flex and then extend the knee of the patient and you can *actually feel* the *crunching* of the bone against bone. So it shows *fairly severe arthritis. I don't think one needs an x-ray to know that she has that,* but it would have been nice to have one.

AR 44 (emphasis added).

District Court with instructions to remand to the Commissioner for further proceedings consistent with this Opinion.