**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2293
_____

JESSIE HOLLOMAN,

Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court for the District of New Jersey
(D.C. Civil No. 14-cv-00589)
District Judge:  Hon. Stanley R. Chesler
_____

Submitted under Third Circuit LAR 34.1(a)
January 21, 2016

Before:  FISHER, CHAGARES, and BARRY, Circuit Judges.

(Filed:  February 8, 2016)
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

    Disability claimant Jessie Holloman appeals a March 25, 2015 order of the United

States District Court for the District of New Jersey, which affirmed a decision by the

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

Social Security Administration ("SSA") to award Holloman only a portion of the benefits that he sought. For the reasons that follow, we will affirm.

I.

Because we write exclusively for the parties, we set forth only those facts necessary to our disposition. On December 3, 2007, Holloman filed a claim with the SSA for disability insurance benefits and supplemental security income, alleging that he became disabled on November 30, 2007. An Administrative Law Judge ("ALJ") reviewed Holloman's claim and, in a decision issued on March 26, 2013, found that he had suffered from diabetes, asthma, hypertension, drug and alcohol abuse, a renal disorder, hepatitis C, GERD, and affective disorders since November 30, 2007. But she concluded that Holloman was only "disabled," as defined by SSA regulations, beginning on February 17, 2011, the point at which he entered a new age category. She awarded disability benefits only from that date forward.[1] On December 27, 2013, the SSA Appeals Council denied Holloman's request for review. Holloman then filed suit in the District Court, which affirmed the SSA's decision on March 25, 2015. Holloman timely appealed.

II.

The District Court exercised jurisdiction under 42 U.S.C. § 405(g), and we have jurisdiction to review the District Court's decision under 28 U.S.C. § 1291. "We exercise

_____

[1] The ALJ had previously issued a similar decision on February 16, 2011, and the SSA Appeals Council remanded the case with instructions for the ALJ to obtain testimony from a vocational expert and reconsider Holloman's residual functional capacity and whether Holloman had any mental impairments.

plenary review over all legal issues." Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292

(3d Cir. 2012). "We review an ALJ's decision under the same standard of review as the

District Court, to determine whether there is substantial evidence on the record to support

the ALJ's decision." Id. "Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion . . . [and] is more than a mere

scintilla but may be somewhat less than a preponderance of the evidence." Zirnsak v.

Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quotation marks omitted).

III.

In this appeal, Holloman challenges the ALJ's decision on three grounds. First, he

contends that the ALJ's step-three analysis[2] (whether his impairments, separately or in

combination, met or equaled a listed impairment) was so deficient as to be "beyond

---

[2] We have observed that:

> The Social Security Administration has promulgated a five-step process for
> evaluating disability claims. First, the Commissioner considers whether the
> claimant is currently engaged in substantial gainful activity. If he is not,
> then the Commissioner considers in the second step whether the claimant
> has a 'severe impairment' that significantly limits his physical or mental
> ability to perform basic work activities. If the claimant suffers a severe
> impairment, the third inquiry is whether, based on the medical evidence, the
> impairment meets the criteria of an impairment listed in the listing of
> impairments, which result in a presumption of disability . . . . If the
> impairment does not meet the criteria for a listed impairment, then the
> Commissioner assesses in the fourth step whether, despite the severe
> impairment, the claimant has the residual functional capacity to perform his
> past work. If the claimant cannot perform his past work, then the final step
> is to determine whether there is other work in the national economy that the
> claimant can perform.

Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000) (quotation marks and citations
omitted).

judicial review." Second, he argues that the ALJ's findings with regard to his "residual functional capacity" ("RFC") were not supported by substantial evidence because the ALJ did not adequately explain her consideration of the evidence. Third, he argues that, in concluding that other jobs were available to Holloman (step five), the ALJ improperly relied on a vocational expert's answers to flawed hypothetical questions — specifically, flawed because they did not reference Holloman's moderate limitation in social functioning.

We have considered each of Holloman's challenges and, for the reasons set forth herein, will affirm the District Court's judgment.

A.

Holloman contends that the ALJ's step-three determination is "beyond judicial review" because the ALJ did not sufficiently analyze whether Holloman's impairments, separately or in combination, met or equaled a listed impairment. We conclude that there was no reversible error at step three.

"At step three, an ALJ is charged with determining whether a claimant's impairment or combination of impairments meets, or medically equals, the criteria of an impairment listed in 20 C.F.R. §§ 404.1520(d) and 416.920(d)." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 502 (3d Cir. 2009). An ALJ's decision must provide some discussion of this determination, so as to make meaningful review of the decision possible. Id. at 504-05. But an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," as long as "there is sufficient development of the record and

4

explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

Holloman identifies a few mental disorder listings that he believes should have been discussed in greater detail. See Holloman Br. 5-14. He faults the ALJ for not discussing the "paragraph A" criteria for the mental disorder listings (which substantiate the presence of a particular disorder, see 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00). But the omission of the "paragraph A" analysis does not render the ALJ's decision unreviewable. It is quite plain that the ALJ's decision rested on the absence of both "paragraph B" and "paragraph C" criteria (which ask whether a disorder actually causes certain functional limitations common to several disorders, such as "[m]arked restriction of activities of daily living," id. § 12.03). Holloman disagrees with the ALJ's conclusions about "paragraph B" and cites countervailing evidence, but that hardly demonstrates that the ALJ's decision is "beyond judicial review."

Holloman also complains in vague terms that certain impairments were not properly compared, separately and in combination, to the listings. But he does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not. Whether or not the ALJ's analysis of these impairments was sufficiently thorough, Holloman offers no explanation of how further analysis could have affected the outcome of his disability claim. Even if we found a portion of the ALJ's step-three analysis to be deficient, we would have no reason to conclude that the deficiency in analysis was harmful to Holloman's claim.

5

Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Holloman therefore must "explain[ ] . . . how the . . . error to which he points could have made any difference." Id. at 413 (emphasis added).[3] Holloman merely asserts that harm was done because a positive finding at step three would have eliminated the need to proceed through steps four and five. But that assertion entirely sidesteps the question, which is how Holloman might have prevailed at step three if the ALJ's analysis had been more thorough. Holloman offers no answer to that question and therefore no basis for us to remand the case to the ALJ. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand . . . .").

### B.

Holloman also challenges the ALJ's RFC determination, arguing that the ALJ did not adequately explain her weighing of the evidence concerning Holloman's "exertional"

---

[3] Of course, during non-adversarial administrative proceedings before an ALJ, a claimant's burden is different because of "the nature of Social Security disability proceedings which are inquisitorial rather than adversarial and in which [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 n.2 (3d Cir. 2000) (quotation marks omitted). But when that claimant then challenges the ALJ's decision in a federal court, the proceedings are adversarial and rely on the parties to raise arguments. If the claimant believes that an error was made, he must clearly identify the error and explain how the error actually "affect[ed] [his] 'substantial rights.'" Shinseki, 556 U.S. at 407 (quoting 28 U.S.C. § 2111).

capacity to perform "light work," and that key evidence of Holloman's mental limitations was virtually ignored. We detect no error in the ALJ's RFC analysis.

Regarding Holloman's exertional capacity, the ALJ explained how "light work" is defined in the regulations and then discussed the relevant evidence at length. The ALJ cited, among other things, reports from multiple medical consultants showing that Holloman was capable of light work and Holloman's own testimony about the activities of daily life that he was able to perform. The ALJ then discussed evidence showing that Holloman's medical conditions, although serious, had not yet progressed to the point of precluding light work, contrary to what Holloman had claimed. Pointing out inconsistencies in Holloman's testimony, the ALJ stated that his claims about the "intensity, persistence and limiting effects of [his] symptoms [we]re not entirely credible." Joint Appendix ("J.A.") 23. That analysis was sufficient to permit meaningful review and was supported by substantial evidence.

Regarding mental limitations, Holloman faults the ALJ for not giving greater weight to a report by a consulting psychiatrist, Dr. Makhija, who documented his mental health issues and listed "diagnostic impressions," which included major depression, an unspecified cognitive disorder, and an unspecified psychotic disorder. Administrative Record ("A.R.") 382-86. It would be erroneous for the ALJ to "make[ ] no mention of any of these significant contradictory findings, leaving us to wonder whether [s]he considered and rejected them, considered and discounted them, or failed to consider them at all." Fargnoli v. Massanari, 247 F.3d 34, 43-44 (3d Cir. 2001). But the ALJ did mention Dr. Makhija's report; it was the basis for the finding that Holloman's RFC was

7

confined to "low stress work where his contact with others is limited" and that Holloman had "moderate deficiencies of concentration, persistence or pace." J.A. 19. The ALJ then, however, went on to conclude that Holloman still had "the concentration to perform the activities of daily living" and noted her agreement with another psychological expert (Dr. Shapiro), who had opined that Holloman was able to understand simple instructions, respond to supervision in a low-contact setting, concentrate on tasks, and adapt to the workplace. Id.; A.R. 402-04. The ALJ's analysis of Holloman's mental capacity was sufficient to permit meaningful review and was supported by substantial evidence.

## C.

Finally, Holloman argues that a critical piece of evidence relating to step five — a vocational expert's answers to hypothetical questions about the availability of jobs that Holloman could still perform in light of his RFC, age, education, and work experience — could not have constituted substantial evidence because it was based on flawed hypothetical questions that did not reference Holloman's moderate limitation in social functioning. Any error here was harmless.

"[A] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004) (emphasis in original). Holloman points out that the ALJ acknowledged his social limitations in her decision[4] but never expressly referenced those limitations in

---

[4] J.A. 19 ("I find that the claimant has a moderate limitation in social functioning. . . . While the claimant's reported irritability and isolative behavior may affect his ability to

8

questioning the vocational expert about the availability of jobs. The ALJ asked the vocational expert about the availability of jobs that involve "light work," that are "simple and unskilled and low stress," and that can be performed with only 6-8 hours of concentration per day and without reading and writing skills. A.R. 896-98.

Proper hypothetical questions would have expressly referenced Holloman's moderate limitation in social functioning, but Holloman has again failed to carry his burden of establishing harm to his substantial rights. He expounds no theory of how a reference to "moderate limitation in social functioning" would have changed the vocational expert's answers and the ALJ's ultimate step-five conclusions. Further, such a theory would be difficult to support. The expert named examples of occupations ("ticketer," "folder," and "produce weigher") that Holloman could perform, citing sections of the Dictionary of Occupational Titles. DICOT 652.685-098, 686.685-030, 299.587-010. Any possibility that "moderate limitation in social functioning" could render Holloman unable to perform those occupations is certainly not apparent from the Dictionary itself, the text of which strongly suggests that those occupations require little, if any, social interaction.

IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.

---

function in a high stress environment, there is no evidence that he cannot perform low stress work where his contact with others is limited.").

9