**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3898
_____

OLIVER GRIER, JR.,
                              Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court for the
District of Delaware
(District Court No.:  1:18-cv-00386)
Magistrate Judge:  Honorable Sherry R. Fallon

_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 2, 2020

(Filed: August 27, 2020)

Before:  GREENAWAY, JR., SHWARTZ and RENDELL, *Circuit Judges*.

O P I N I O N*
_____

**RENDELL**, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Oliver Grier, Jr., challenges the District Court's decision to affirm the Administrative Law Judge's (ALJ) denial of his application for supplemental security income (SSI). Grier argues that the ALJ and the District Court failed to consider his need for a supportive environment and improperly discounted the opinions of his treating physicians. We agree that consideration of the impact of a supportive environment on Grier's ability to work was warranted, and we will therefore vacate and remand for further proceedings.

## I.    Factual and Procedural Background

On August 27, 2013, Grier filed a claim for SSI and alleged disability on the basis of mental impairments that caused him difficulty working around large numbers of people.[1] At the time, he was 23 with limited education and past work experience. He had been diagnosed with schizophrenia, among other psychological issues.

The state disability agency referred Grier for an in-person examination with a psychologist, Kimberlyn R. Watson, Ph.D. Dr. Watson conducted the examination in November 2013 and found no evidence of an active psychotic disorder, although she diagnosed paranoid personality features, bipolar disorder, learning disability, and social anxiety disorder all by history. She emphasized that Grier "seems to function well with his current level of stressors" and noted that he has "a very structured life with limited exposure to a wide range of individuals who are unknown to him." Tr. 333. Overall, Dr.

---

[1] Appellant had previously applied for SSI in 2012, but the SSA denied his claim at the initial level of review without any further appeal.

Watson evaluated Grier's Global Assessment of Functioning (GAF) score as 57, indicating moderate symptoms or functioning difficulties.

Dr. Watson also completed an evaluation form concerning specific functional areas. She assessed Grier as moderately impaired in relating to others and, with respect to his daily living activities, mildly restricted when in his own space, but moderately restricted when around crowds. Dr. Watson found a moderate limitation in coping with the pressures of ordinary work and only mild limitations in understanding simple instructions, carrying out instructions under ordinary supervision, performing routine or repetitive tasks under ordinary supervision, and sustaining work performance and attendance in a normal work setting.

Two non-examining specialists reviewed and agreed with Dr. Watson's conclusions. In January 2014, the state disability agency referred the case to Charlene Tucker-Okine, Ph.D., who agreed that Grier was only mildly or moderately limited in functional abilities relevant to work performance. After Grier sought reconsideration, the state agency referred the case to Christopher King, Psy.D., who reviewed the file. On August 13, 2014, Dr. King agreed that Grier was only mildly or moderately limited in abilities relevant to sustained work performance. Both Dr. King and Dr. Tucker-Okine determined, based on their review of Grier's file, that he could "handle simple tasks in a low contact environment." Tr. 76, 89.

Twice in 2014, Grier was hospitalized when he stopped taking his medication and engaged in substance abuse. On March 16 and 17, 2014, he was hospitalized after

engaging in violent behavior and demonstrating paranoia. He was transferred to the Delaware Psychiatric Center, where he improved after resuming medication and treatment. He was discharged on April 22, 2014, with a GAF score of 55. His personal discharge plan stated that he would rely on "family and friends['] support" in his recovery and that he felt "unsafe" in "big crowds." Tr. 475. In October 2014, Grier was again hospitalized after non-compliance with medication. He presented with auditory hallucinations, paranoia, and agitation. After an 11-day stay at the Rockford Center, during which he resumed medication and therapy, he was discharged with a GAF score of 50.

In addition to the foregoing records, the ALJ who assessed Grier's SSI application considered records from Grier's treating psychiatrist at the time of the hearing, Lavinia Park, MD; his former treating psychiatrist, Ralph Kaufman, MD; and his mental health case manager, Carlos Mackell, MS. In a questionnaire completed at the request of the state, Mackell emphasized Grier's challenges with memory, concentration, and completing tasks. Mackell also noted, however, that Grier could interact with others positively and engage in various activities. Nonetheless, Mackell concluded that Grier requires support from RHD staff or his parents, and that his condition "cause[s] him to not be capable of working at this time." Tr. 423. In other reports, Mackell noted that Grier "relies heavily on his" family, and especially his mother, who "pay[s] his bills and provide[s] him with money on a weekly basis"; relies on his family for transportation; and "needs his family to advocate for him in some situations." Tr. 550, 552. Mackell

4

also observed that Grier had "[g]ood family suppor[t]," despite his hallucinations, delusions, and isolation.  Tr. 581.

Dr. Kaufman's notes from around the same time—when he was Grier's treating psychiatrist—indicate some panic attacks, paranoia, and hallucinations, but his notes also emphasize that, with medication, Grier steadily improved and engaged in certain activities.  Similarly, Dr. Kaufman's notes from after Grier's second hospitalization indicate that he improved, was not exhibiting delusional symptoms or having racing thoughts, and was able to spend time doing activities.  On February 2, 2015, Dr. Kaufman completed a Delaware Health and Social Services Medical Certification in which he opined that Grier could not work at his usual occupation and would not be able to perform any other work full time.  Dr. Kaufman's subsequent notes, however, indicate that Grier's delusional thinking was only occasional and "d[id] not appear to impact him so much."  Tr. 592.  The same records indicate that Grier increasingly left the house and engaged in social activities with his family members.

Dr. Park offered similar assessments about Grier's ability to work, although her records also showed improvement.  In March 2016, just after Dr. Park took over Grier's care from Dr. Kaufman, she submitted a medical summary in which she observed that Grier had schizophrenia, could not work full-time, and required supervision.  She noted, however, that his condition had improved since his October 2014 hospitalization and that his medication effectively managed auditory hallucinations, paranoia, and mood.  Records also indicate that Grier was increasingly active and social, including going out to stores or gas stations with family and pushing himself to go out despite his ongoing

5

anxiety. Dr. Park's August 2016 notes specifically recount normal, logical thought processes. Nonetheless, in a questionnaire around the same time, Dr. Park recorded that, despite the use of medications, Grier continued to struggle with anxiety, panic attacks, paranoia, and delusions. Dr. Park wrote that Grier had a poor ability to work in proximity with others, deal with the public, or travel in unfamiliar places. She also found that he had a serious limitation in his ability to maintain attention, maintain attendance, be punctual, respond to changes appropriately, deal with normal work stress, set realistic goals, maintain socially appropriate behavior, and use public transportation.

In October 2016, ALJ Jack Penca conducted a hearing and evaluated the record. The ALJ heard from Grier, his mother, his attorney, and a vocational expert. He also reviewed Dr. Watson's November 2013 examination report, the reports from Dr. Tucker-Okine and Dr. King, and the records from Grier's hospitalizations and treatment through 2016.

The ALJ found that Grier had the severe impairment of schizophrenia but that the impairment did not meet a mental listing for per se disability. The ALJ then assessed Grier's residual functional capacity (RFC) and determined that Grier could sustain work in a job with "simple, unskilled tasks; no fast pace or strict production requirements; occasional interaction with co-workers, with no teamwork or tandem tasks; and no interaction with the public." Tr. 24.

In reaching this conclusion, the ALJ afforded "great weight" to the opinions of the Agency specialists, Dr. Watson, Dr. Tucker-Okine, and Dr. King, that Grier had no more than mild or moderate limitations. Tr. 26. In the ALJ's view, available records showed

6

that Grier's functionality remained equivalent to the functionality that the Agency specialists found in their evaluations, so long as he complied with treatment. Although the ALJ acknowledged that Grier had twice been hospitalized in 2014, he emphasized that those episodes resulted from non-compliance with medication and that, since the hospitalizations, Grier had demonstrated increased activity and independence, which corroborated the conclusions of the Agency specialists.

The ALJ gave "no weight" to the opinions of Appellant's treating physicians and case manager. Tr. 27. He found their conclusions that Grier's limitations would prevent full-time work inconsistent with the record and the physicians' notes. Based primarily on the Agency physicians' reports and the testimony of the vocational expert, the ALJ concluded that Grier was not disabled from the date of his application through the date of the decision. The Appeals Council denied a request for review.

Grier argued before the District Court that the ALJ erred in his assessment of the opinions of the treating providers and in failing to consider Grier's need for a structured living environment. The Court found that both the ALJ's evaluation of the treating providers' medical opinions and the ALJ's finding that Grier could function outside a structured living environment were supported by substantial evidence. Finding that substantial evidence supported the ALJ's determination regarding Grier's RFC, the District Court denied Grier's motion for summary judgment and granted the

7

Commissioner's cross-motion for summary judgment.  It then denied a motion to alter or amend the judgment, and Grier now appeals.[2]

## II.    Standard of Review

Like the District Court, we exercise plenary review over the ALJ's legal conclusions and review the factual findings for substantial evidence.  42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 777 F.3d 607, 610-11 (3d Cir. 2014).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Although "we owe deference to [the ALJ's] evaluation of the evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions," remand is necessary "where we cannot ascertain whether the ALJ truly considered competing evidence, and whether a claimant's conditions, individually and collectively, impacted" his ability to work.  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

## III.    Discussion

Grier raises two issues on appeal.  First, he contends that the ALJ did not adequately evaluate the medical opinion evidence.  Second, he argues that the ALJ failed to consider his need for a supportive environment when formulating the RFC.

We need not address whether the ALJ erred in how it weighed the medical evidence because we agree that the ALJ failed to consider Grier's need for a structured living environment.  In addition to medical evidence, RFC assessments "must be based

---

[2] The District Court had jurisdiction under 42 U.S.C. § 405(g).  We have jurisdiction to review the District Court's decision pursuant to 28 U.S.C. § 1291.

8

on *all* of the relevant evidence in the case record, such as . . . [n]eed for structured living environment." SSR 96-8P, 1996 WL 374184 (July 2, 1996). Failure to address crucial facts, such as the need for a structured environment, may warrant remand. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). Here, the ALJ's brief discussion of Grier's need for a structured environment was inadequate and overlooked crucial evidence.

The government contends that the ALJ's brief references to Grier's environment provided sufficient consideration of Grier's need for a structured environment. We disagree. The ALJ failed to discuss specific evidence pertaining to the significance of Grier's structured living environment. For instance, most of the activities to which the ALJ pointed as evidence of Grier's ability to engage in the community without support were activities—swimming, yard work, exercise—that he only enjoyed when in the company of close family or friends. Similarly, Dr. Watson's evaluation, to which the ALJ attributed "great weight," Tr. 26, noted that Grier currently has "a very structured life with limited exposure to a wide range of individuals who are unknown to him" and that he "functions well within his current level of stressors" in such a structured environment. Tr. 333. This evidence suggests that Grier's success may be the result of his current environment, which is quite structured and involves limited exposure to unfamiliar individuals. Yet the ALJ did not consider this possibility.

The ALJ also emphasized Grier's ability to function when compliant with medication but did not examine whether Grier requires a supportive environment in order to maintain compliance. Grier's mother indicated that Grier requires regular reminders to

take his medication, and Grier's two hospitalizations due to noncompliance, both of which occurred even when in a supportive environment, corroborate the view that support may be essential to Grier maintaining medication compliance. The ALJ acknowledged the hospitalizations and repeatedly qualified Grier's stable condition as dependent on medication compliance. But the ALJ never considered the need for a structured environment to ensure such compliance. Because the ALJ failed to adequately consider this important issue, we will remand to allow for consideration of Grier's need for a supportive environment.

## IV.    Conclusion

For the foregoing reasons, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.