**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2983
_____

WAYNE A. SMITH,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 08-cv-02875)
District Judge:  Honorable Dennis M. Cavanaugh
_____

Submitted Under Third Circuit LAR 34.1(a)
November 16, 2010
_____

Before: BARRY, CHAGARES and VANASKIE,
<u>Circuit Judges</u>

(Opinion Filed: November 22, 2010)
_____

Abraham S. Alter, Esq.
James Langton, Esq.
Langton & Alter
2096 St. Georges Avenue
Rahway, NJ 07065-0000

<u>Counsel for Appellant</u>

Susan J. Reiss, Esq.
Social Security Administration
Office of General counsel – Region II
Room 3904
26 Federal Plaza
New York, NY 10278-0000

Counsel for Appellee

_____

OPINION OF THE COURT
_____

BARRY, Circuit Judge

Wayne Smith appeals from an Order of the United States District Court for the District of New Jersey affirming a decision of the Commissioner of Social Security. That decision denied Smith's claims for disability insurance benefits and supplemental security income under the Social Security Act. Smith contends that the hypothetical question posed by the administrative law judge ("ALJ") to the vocational expert did not sufficiently convey all of Smith's limitations, and that as a result, the Commissioner's decision was not supported by substantial evidence. We will affirm.

## I. Jurisdiction and Standard of Review

The District Court had jurisdiction under 42 U.S.C. § 405(g). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review is limited to determining whether there was substantial evidence to support the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). "Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks omitted). The Commissioner's findings of fact are binding if they are supported by substantial evidence. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## II. Applicable Law

An individual is disabled for purposes of the Social Security Act ("SSA") only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In making this determination, an ALJ must perform a five-step, sequential analysis. 20 C.F.R. § 404.1520. The ALJ must review (1) the claimant's current work activity; (2) the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can "make an adjustment to other work" in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Under the Social Security regulations, "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." 20 C.F.R. § 404.1560(b)(2). While "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*," *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005), "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Id.* Thus, the ALJ is bound to convey only those impairments "that are medically established." *Id.*

## III. Background

2

## A. Procedural Overview

Smith filed applications for disability insurance benefits and supplemental security income on August 18, 2004, alleging that he was disabled as of October 19, 2003. The application was denied initially, and on reconsideration. Smith requested a hearing before an ALJ, and the hearing was held before ALJ Donna A. Krappa. On November 20, 2007, the ALJ issued a decision finding — at step four of the sequential analysis — that Smith had sufficient residual functional capacity to return to his past relevant work as a warehouse worker or a loader or unloader of trucks. The Appeals Council denied Smith's request for review of that decision, and on May 15, 2009, the District Court affirmed. Smith timely appealed.

## B. The Hearing Before the ALJ

Smith argues that the hypothetical question posed to the vocational expert, Rocco Meola, did not fully reflect the medical conclusions of three medical experts: Dr. M. Graff, Dr. Benito Tan, and Dr. Daniel Edelman. This argument lacks merit.

### 1. Dr. Tan

Dr. Tan completed a Form SSA-4734-BK-SUP (a "Mental Residual Functional Capacity Assessment") on February 10, 2005. Section I of the Form, "Summary Conclusions," requires that the person filling it out select one of the following options for twenty psychological attributes: "Not Significantly Limited," "Moderately Limited," "Markedly Limited," "No Evidence of Limitation in this Category," or "Not Ratable on Available Evidence." Dr. Tan found that Smith was "Not Significantly Limited" for fourteen attributes and "Moderately Limited" for the following six:

> ability to understand and remember detailed instructions
>
> ability to carry out detailed instructions

3

ability to maintain attention and concentration for extended periods

ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods

ability to accept instructions and respond appropriately to criticism from supervisors

ability to respond appropriately to changes in the work setting.

(App. 217-18.) In Section III of the Form, "Functional Capacity Assessment," Dr. Tan wrote that Smith "is able to follow instructions, maintain pace/persistence, concentration and attention, relate appropriately and adapt, in work settings." (*Id.* 219.)

## 2. Dr. Graff

Dr. Graff completed a Mental Residual Functional Capacity Assessment on December 21, 2005. Dr. Graff selected "Not Significantly Limited" for ten attributes and "Moderately Limited" for the following ten:

ability to understand and remember detailed instructions

ability to carry out detailed instructions

ability to maintain attention and concentration for extended periods

ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances

ability to work in coordination with or

4

proximity to others without being distracted by them

ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods

ability to ask simple questions or request assistance

ability to accept instructions and respond appropriately to criticism from supervisors

ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes

ability to set realistic goals or make plans independently of others.

(*Id.* 278-79.)  In Section III of the form, Dr. Graff directed the reader to another form completed on that date, in which he wrote the following assessment:

It appears that the claimant suffers from depressive symptoms that are no more than mild to moderate.  His social interaction abilities are severely impaired, but, overall, he does not meet or equal a listing.

The claimant is capable of at least entry-level work in a setting with minimal interpersonal contact.

(*Id.* 282.)

### 3. Dr. Edelman

Dr. Daniel Edelman completed a psychological

5

evaluation of Smith on July 18, 2005, and reached the following conclusions:

> Claimant can follow and understand simple directions and instructions and perform simple tasks independently. He may have difficulty, at present, maintaining attention and concentration for tasks of significant complexity. He cannot presently maintain a regular schedule. He would have difficulty, at present, learning new tasks. He would have difficulty, at present, performing select complex tasks. He cannot, at present, make appropriate decisions, relate adequately with others, or appropriately deal with stress. Difficulties are caused by depression.

(*Id.* 229.)

### 4. The Hypothetical Question

Near the end of the hearing, the ALJ took testimony from Rocco Meola, a vocational expert. After confirming that Meola had reviewed the case file, the ALJ posed the following hypothetical question:

> ALJ: I'd like to assume a person the claimant's age, education and work history. And further assume that this individual is limited to medium work, simple, routine, repetitive, one or two-step tasks and jobs where they would just have occasional interaction with the public or coworkers. Given this hypothetical individual, could this person perform the past relevant work of the claimant?

> VE: He could do the job of loading and unloading truck [sic] as he did it. And general warehouse work is also — would meet the classification.

6

(*Id.* 65.)

Counsel for Smith asked Meola about the various respects in which Dr. Graff and Dr. Tan had concluded that Smith was "moderately limited" in Section I of the Mental Residual Functional Capacity Assessment. After the ALJ directed counsel to provide Meola a definition of "moderate," Meola suggested that "moderate" might mean "that the person is not preclud[ed] from doing the activity, but does not do it at a level that would be consistent with what's acceptable in a national workforce." (*Id.* 67-68.) If Smith were so limited in all the respects noted by Dr. Graff and Dr. Tan, Meola testified, Smith would not be able to return to his past relevant work.

### III. Discussion

Smith's argument on appeal is that the hypothetical question posed by the ALJ to Meola failed to take account of all the limitations noted by Dr. Tan, Dr. Graff, and Dr. Edelman, such that Meola's answer cannot constitute "substantial evidence."

### A. Dr. Tan and Dr. Graff

Smith's main argument is that the hypothetical question did not sufficiently include Dr. Tan's and Dr. Graff's conclusions that Smith was "moderately limited" in the various areas that they noted in Section I of the Mental Residual Functional Capacity Assessment. As the Social Security Administration's guidelines (the "Program Operations Manual System," or "POMS") explain, however, "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and *does not constitute the RFC assessment.*" POMS DI 24510.060, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (emphasis added). Numerous district courts in this circuit have recognized this point and held that Section I of the form may be assigned little or no weight. *See Molloy v. Astrue*, No.

7

08-4801, 2010 WL 421090, at *11 (D.N.J. Feb. 1, 2010) ("According to the Social Security Administration's internal operating guidelines . . . , this section of the examination form does not constitute the RFC assessment but rather is merely a worksheet to aid employees. Therefore, [the ALJ] was not required to assign *any* weight to this part of the report because it was not the final RFC finding." (internal quotation marks and citation omitted)); *Liggett v. Astrue*, No. 08-1913, 2009 WL 189934, at *8 (E.D. Pa. Jan. 27, 2009) (explaining that "Dr. Chiampi's actual mental residual functional capacity assessment [was located] in Part III of the Mental Residual Functional Capacity Form" and that "the undersigned does not accept the 'summary conclusions' in Part I as the assessment of the claimant's mental residual functional capacity here"); *Torres v. Comm'r of Soc. Sec.*, No. 07-1951, 2008 WL 5244384, at *12 (D.N.J. Dec. 15, 2008) ("[T]he check blocks in Section I of the assessment do not constitute the assessment itself, but function rather as a worksheet to aid the physician in making an assessment. Therefore, the ALJ's hypothetical accurately reflected [the doctors'] opinion of Plaintiff's condition." (citation omitted)). The District Court also understood this point. *See Smith v. Astrue*, No. 08 Civ. 2875, 2009 WL 1372536, at *5 (D.N.J. May 15, 2009) ("As the Commissioner correctly notes, Section I is not the actual Residual Functional Capacity ('RFC') assessment, but rather a worksheet to aid in determining the presence and degree of functional limitations. Instead, the actual mental RFC assessment is found in Section III of the Form.").

Parenthetically, it bears noting that the definition of "moderate limitation" assumed by Meola is incorrect, as the Social Security Administration has provided a specific definition of the term in the context of the Mental Residual Functional Capacity Assessment. *See* POMS DI 24510.063(B)(2), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510063 (indicating that "moderately limited" should be selected when "the individual's capacity to perform the activity is impaired"). The definition does not require that the individual's capacity be at a level that is unacceptable in a national workforce; rather, the instructions specify that "[t]he

8

degree and extent of the capacity or limitation must be described in narrative format in Section III." *Id.*

Because Smith cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient, his argument is without merit as it pertains to Dr. Tan and Dr. Graff.

## B. Dr. Edelman

Smith also contends that the hypothetical question failed to include the conclusions of Dr. Edelman, a contention that was not presented to the District Court. Although Smith's brief on appeal is in many respects indistinguishable from the brief that he filed in the District Court, the section discussing Dr. Edelman is entirely new. Dr. Edelman's name does not appear even once in the brief that Smith filed in the District Court, nor does it appear even once in the opinion of the District Court. Smith's failure to raise any argument as to Dr. Edelman in that Court operates to waive that argument here. *See, e.g.*, *Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir. 1994) ("This court has consistently held that it will not consider issues that are raised for the first time on appeal.").[1]

## IV. Conclusion

The judgment of the District Court will be affirmed.

---

[1] In any event, we note that Dr. Edelman concluded that Smith could "follow and understand simple directions and instructions and perform simple tasks independently." (App. 229.) While Dr. Edelman found that Smith would have difficulty with "tasks of significant complexity," "learning new tasks," or "deal[ing] with stress" (*id.*), the hypothetical question presumed that Smith was only capable of "simple, routine, repetitive, one or two-step tasks" (App. 65), language largely consistent with the limitations noted by Dr. Edelman.