NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 14, 2011
Decided February 7, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-2274

| | |
|---|---|
| LAROLD L. RICHISON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 11-CV-08 |
| | |
| MICHAEL J. ASTRUE, | Barbara B. Crabb, |
| Commissioner of Social Security, | *Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Larold Richison, a 51-year-old kidney-transplant recipient with a history of foot problems, appeals from the district court's decision upholding the denial of his application for disability benefits. Because substantial evidence supports the Commissioner's determination, we affirm the judgment.

Richison struggled with numerous physical problems in recent years, chief among them kidney failure and severe stiffness in both of his big toes. His kidney problems forced him to quit his job as a hardware store clerk in 1996, leading to a seven-year period when he received disability insurance. He had successful kidney-transplant surgery in 1999 and told doctors as recently as 2009 that his kidney function was "good." Nonetheless, Richison's nephrologist, Dr. Gary Schwochau, wrote in a letter to Richison's attorney in early 2009 that

Richison's kidneys will deteriorate slowly in the coming years and that eventually he will need dialysis treatment. Schwochau opined that the combined effects of Richison's illnesses "preclude him from doing extensive physical exertion."

Regarding his toes, Richison suffered from foot pain for years before doctors diagnosed him in 2007 with hallux rigidus, a painful deformity that limits motion in the joint at the base of the big toe. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 818 (32d ed. 2012). He had surgery on his right big toe in 2007 and on his left big toe in 2008. After the first surgery, he was told to elevate his right foot above his heart to prevent swelling; later examinations showed minimal swelling. His podiatrist, Dr. Patrick Yoon, noted that Richison's circulation was "intact" as of September 2009 and made no mention of leg elevation in his treatment notes, but in a short letter three months later to Richison's attorney, he opined that Richison had "decreased circulation in both lower extremities" and had to "keep his legs elevated much of the day to eliminate swelling in his lower extremities." Yoon wrote that Richison was "disabled at this time."

Richison's other infirmities include diabetes, hypertension, and a left-shoulder injury that required surgery. He injured the shoulder after falling out of a deer stand while hunting in 2008. Shortly after the surgery, he reported suffering shoulder pain while closing his car's hood, though doctors found no evidence that he aggravated the injury.

Richison filed his disability claim in May 2007, alleging a period of disability starting in December 2004. After his claim was denied, he received a hearing before an administrative law judge at which he testified that swelling in his feet forced him to spend most of his day in a recliner with his feet elevated to the level of his heart. He reported spending minimal time on his feet and having difficulty driving. He also told the ALJ that he travels once every week to two weeks from his home in northwest Wisconsin to a Minneapolis transplant clinic for follow-up treatment for his kidney. Each visit takes five to six hours, including travel time. The ALJ also heard testimony from a vocational expert, who opined that there were sedentary jobs available in the economy that a person with Richison's restrictions could perform. When questioned further by Richison's attorney, the expert acknowledged that many sedentary jobs do not allow employees to work with their feet elevated at or above heart level, though he told the ALJ that some employers allow it.

In rejecting Richison's claim of disability, the ALJ concluded that his various ailments did not preclude him from doing sedentary work. Navigating through the required five-step analysis, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that Richison had not worked since his alleged onset date (step one); his toe stiffness constituted a severe impairment (step two); his impairments did not meet or equal a listed impairment (step three); he could not perform his past work (step four); but there existed

jobs in the economy that he could do (step five). As part of his analysis, the ALJ concluded that Richison retained the residual functional capacity ("RFC") to perform the full range of sedentary work, *see id.* § 404.1567(a). He did not credit Yoon's opinion that Richison had to elevate his legs because, he concluded, that opinion was contradicted by other medical evidence. And he discounted Yoon's opinion that Richison was "disabled" as an ultimate determination for the Commissioner to make. The ALJ also discredited Richison's testimony about his physical limitations, noting that Richison went deer hunting and worked on his car. As for his step-five determination that there existed jobs Richison could perform, the ALJ relied solely on the Medical-Vocational Guidelines ("the grids"), *see id.* § 404, Subpt. P, App. 2, and did not mention the vocational expert's testimony.

On appeal, Richison challenges four aspects of the ALJ's decision, which we review as the final word of the Commissioner because the Appeals Council declined review. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). We limit our review to the reasoning set forth in the ALJ's written decision, *see Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011), assessing whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). Substantial evidence is such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

First, Richison contends that the ALJ erred in discounting Yoon's opinion that he must elevate his legs all day—a requirement that would limit greatly (and perhaps eliminate) his employment prospects—and his conclusion that Richison is "disabled." Yoon was his treating podiatrist, and Richison argues that there was no evidence to undermine his opinion. He insists that those opinions should have been afforded controlling weight. But a treating physician's opinion receives controlling weight only when it is not "inconsistent with the other substantial evidence" in the record, 20 C.F.R. § 404.1527(d)(2); *see Scott*, 647 F.3d at 739; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ did not err here in determining that Yoon's opinion conflicted with other medical evidence, including his own treatment notes. Though Yoon opined in his letter that Richison had decreased circulation in his legs, which needed to be elevated to eliminate swelling, his treatment notes from September 2009 reported that Richison's circulation was "intact." Other doctors' evaluations also described swelling in his feet as either minimal or nonexistent. Yoon recommended "conservative treatment," including supports to stabilize Richison's feet when he walked, but he made no mention in his treatment notes of Richison needing to elevate his feet. An ALJ may decline to credit a treating physician's opinion if it is "internally inconsistent," *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008). That was the case here. And as for Yoon's opinion that Richison was "disabled," the ALJ correctly labeled that as an ultimate determination reserved to the Commissioner.

*See* 20 C.F.R. § 404.1527(e)(1); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002); *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).

Next Richison cites the ALJ's determination that Richison's assertions about his limitations were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." Richison complains that such a conclusion was merely a recitation of "boilerplate." We have derided this sort of boilerplate as inadequate, by itself, to support a credibility finding. *See Punzio*, 630 F.3d at 709; *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010); *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). But in this case the ALJ said more, questioning Richison's representation that he could do no more than nap and rest, given that he went hunting and apparently attempted to work on his car. *See Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (upholding ALJ's adverse credibility determination regarding constraints imposed on claimant by back pain where claimant performed household chores, went fishing, and drove long distances to see his girlfriend). The ALJ also cited various medical reports showing that Richison's foot condition improved over time. By explaining which of Richison's statements he did not credit and why, the ALJ provided a sufficient basis for his credibility assessment. *See Castile v. Astrue*, 617 F.3d 923, 929–30 (7th Cir. 2010).

Richison next asserts that the ALJ did not consider the evidence as a whole in making his RFC assessment. An RFC determination must account for all impairments, even those that are not severe in isolation, *see* 20 C.F.R. § 404.1545(a)(2); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009), and an ALJ must consider the cumulative effect of the claimant's impairments, *see Parker*, 597 F.3d at 923; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In this case, however, the ALJ demonstrated adequate consideration of all the evidence; he wrote that he gave "careful consideration" to "the entire record" and "considered all symptoms" and also credited the opinion of Dr. Schwochau, Richison's nephrologist, who opined that the combined effect of Richison's illnesses prevented him from exerting himself extensively. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

Finally, Richison assails the ALJ's use of the grids in determining that jobs existed in the economy that he could perform. But Richison's argument on this point rehashes his other contentions without explaining why the use of the grids was inappropriate. The ALJ concluded that Richison's impairments affected only his ability to exert himself and did not impose "non-exertional" limitations—such as a lack of concentration or memory—and his use of the grids thus was entirely proper. *See* 20 C.F.R. § 404.1569a(b), (c); *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Richison also attempts to argue that the ALJ erred by failing to address the potential effect of his biweekly trips to the transplant clinic in Minneapolis on his employment

prospects. But Richison has not developed this argument on appeal and did not present it at all in the district court, thus waiving it. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001); *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010).

AFFIRMED.