**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1200
_____

MARK A. HORST
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
                    Appellee
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 5-12-cv-00099)
District Judge: Hon. Edmund V. Ludwig
_____

Submitted Under Third Circuit LAR 34.1(a)
November 8, 2013
_____

Before: GREENAWAY, JR., VANASKIE, and ROTH, *Circuit Judges*.

(Filed: January 8, 2014)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Mark A. Horst ("Horst" or "Appellant") appeals the decision of the District Court

affirming the Commissioner of Social Security's (the "Commissioner's") determination

that he is not disabled, pursuant to 42 U.S.C. §§ 416(1) and 423. For the following reasons, we will affirm the District Court's judgment.

## I. BACKGROUND

As we write primarily for the benefit of the parties, we recite only the essential facts.

In November 2006, Horst suffered an injury to his back while lifting a case of soda at work, causing back pain and leg numbness. As a result, Horst consulted with several doctors in the ensuing years, based on both physical symptoms related to this injury and mental impairment arising from depression.[1]

The Administrative Law Judge ("ALJ") described Horst's treatment comprehensively; we need not repeat it in toto here. To summarize, beginning in 2007, Horst saw three principal doctors[2] for his physical ailments: Dr. Thomas Kohl, his treating physician; Dr. Stephen Banco, his orthopedic surgeon; and Dr. Yong Park, a pain management consultant.

In August 2007, Dr. Banco performed a posterior spinal fusion and lumbar laminectomy, which, despite its success, left Horst continuing to complain of persistent pain and limited physical ability. Dr. Banco referred him to an occupational therapist for a Functional Capacity Evaluation ("FCE") in March 2008. The FCE was inconclusive due to Horst's "self-limiting" behavior. (App. 692-93.)

---

[1] Horst also submitted to the Administrative Law Judge information regarding alcohol addiction.

[2] The record includes treatment notes from several other doctors, all of which we have considered in reaching our decision here.

2

In July 2008, Dr. Banco reviewed a surveillance video depicting Horst performing several physical tasks Horst had claimed he could not do, such as walking without his cane and lifting his son into a car seat. As a result of seeing this video, Dr. Banco released Horst to full duty, stating he had a complete fusion and appeared to be exaggerating his symptoms.

Dr. Kohl's notes based on his examinations of Horst between the time of his surgery (August 2007) and January 2010 routinely reflect his view that Horst was "OK to resume activity; no heavy work/lifting" (App. 808, 809, 811, 813), "overall getting better" (App. 817), and that his leg pain had abated (App. 813). Despite these observations, Dr. Kohl wrote a letter dated January 8, 2010 asserting that Horst was "unable to return to work" due to chronic back pain. (App. 938.)

Dr. Park administered epidural injections to treat Horst's pain. While these injections initially helped, Horst complained to Dr. Park that the pain would return a short time later.

With respect to Horst's mental health problems, he began seeing Martin Cheatle, Ph.D., director of the Reading Hospital Behavioral Medicine Center, in September 2007 for psychological treatment. Dr. Cheatle diagnosed Horst with depression. Horst reported to Dr. Cheatle that he had previously attempted suicide, but denied further suicidal thoughts. Horst was hospitalized for suicidal ideations in September 2008 and

3

was discharged following mood improvement resulting from medication. Upon discharge, Horst had a GAF[3] score of 55.

In May 2009, Horst was hospitalized regarding his suicidal ideations. He was evaluated with a GAF score of 20 upon admission, but when he was discharged five days later, his GAF score was 53. In June 2009, Horst was evaluated by Dr. Daniel Sullman, who reported a GAF score of 20. Horst presented for psychiatric treatment on August 10, 2010, reporting depressed feelings but no suicidal thoughts; his GAF score was assessed at 55.

Following his application for disability benefits, Horst had several residual functional capacity ("RFC")[4] assessments. State consultants assessed Horst's physical RFC to be limited to carrying 10 pounds frequently and 20 pounds occasionally and standing, walking, and sitting for 6 hours in an 8-hour workday, resulting in the

---

[3] "GAF" stands for "Global Assessment of Functioning;" which

> is a numeric rating used by mental health practitioners to measure the functional impairment of a patient on a 0–100 scale in accordance with the Diagnostic and Statistical Manual of Mental Disorders. A score of 40 represents "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .).

*Funk v. CIGNA Group Ins.*, 648 F.3d 182, 186 n.6 (3d Cir. 2011) (quoting Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., 2000) ("DSM-IV") (internal citations omitted)).

[4] "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)).

conclusion that he could perform less than the full range of light work. By contrast, Dr. Leon Venier, an independent consultative physician, examined Horst, finding his impairments to be far more severe, limiting him to carrying 2-3 pounds frequently and 10 pounds occasionally, standing for 1 hour, and sitting for 2 hours in an 8-hour workday. Alex Siegel, Ph.D., a state agency consultant, completed a mental RFC assessment on Horst, concluding that he could understand and follow simple job instructions.

Horst's application was initially denied. He requested a hearing, which was held on July 21, 2010 where he testified that he was unable to work due to the combined effects of his physical and mental impairments. He further testified that he could perform numerous tasks of daily living, such as sweeping, taking out the trash, driving, and regularly socializing in person and on the phone.

In a thorough opinion, the ALJ determined that Horst's symptoms did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1, and that Horst had the RFC to perform less than a full range of light work. In reaching this conclusion, the ALJ noted that Horst's testimony reflected a level of functioning "inconsistent with his allegations of complete disability." (App. 39.) She credited the state agency RFC assessment and Dr. Banco's opinion that Horst was exaggerating his symptoms. She also rejected Dr. Venier's RFC assessment and Dr. Kohl's letter, determining both were conclusory and inconsistent with the record evidence. The Appeals Council denied review and Horst brought suit in the District Court seeking judicial review. The District Court denied his application for review, and Horst now appeals.

## II. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291.

Although our review of the District Court's order is plenary, our review of the ALJ's decision to deny benefits is limited to determining whether the ALJ's findings are supported by substantial evidence. *See Hagans v. Comm'r of Social Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). Substantial evidence is "'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. *Id.* (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

In reviewing an ALJ's determination for substantial evidence, "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Nevertheless, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981); *see also Diaz v. Comm'r of Social Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) (remanding case to ALJ where the Court "[could] not ascertain whether the ALJ truly considered competing evidence, and whether [the] claimant's conditions, individually and collectively, impacted her workplace performance.").

## III. ANALYSIS

An individual qualifies as disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he . . . cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is entitled to disability benefits,

> [t]he ALJ must review (1) the claimant's current work activity; (2) the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can "make an adjustment to other work" in the national economy.

*Smith v. Comm'r of Social Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

Appellant raises three objections[5] on appeal: (1) the ALJ failed to give controlling weight to Dr. Kohl's opinion that Horst was "unable to return to work;" (2) the ALJ erred in rejecting the RFC assessment performed by Dr. Venier; and (3) in evaluating Appellant's mental impairments, the ALJ gave insufficient consideration to Horst's low GAF scores on September 6, 2008, May 21, 2009, and June 8, 2009, reflecting episodes of decompensation.[6]

---

[5] In a footnote, Appellant references a deposition of Brian Shiple, D.O. in which Dr. Shiple asserts Horst would not be able to work full time before "going back on some type of disability." (Appellant's Br. 15 n.3.) Rather than raising any argument regarding this opinion, Appellant simply notes that the ALJ gave Dr. Shiple's opinion "little weight because it is conclusory and is not supported by evidence of record." (*Id.*) To the extent this footnote was intended to be an objection to the ALJ's treatment of Dr. Shiple's opinion, we reject it since the ALJ provided an explanation for her decision to give this opinion little weight.

[6] "Episodes of decompensation" are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social

**A. Failing to Give Controlling Weight to the Opinion of Dr. Kohl**

Appellant argues the ALJ erred by failing to give controlling weight to the opinion of Dr. Kohl, Horst's treating physician.[7] "Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Controlling weight is given when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 CFR § 404.1527(d)(2). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli*, 247 F.3d at 43.

Here, the ALJ explained she gave Dr. Kohl's conclusory statement that Horst was unable to return to work little weight "because it is inconsistent with the evidence of record." (App. 40.) For example, Dr. Banco, who treated Horst for over a year, "concluded that [Horst] was exaggerating his symptoms," based upon a video showing Horst "had a greater ability to function than he had reported." (App. 39-40.) Further, Dr. Park's medical records indicate improvement in Horst's condition over the course of time. Even Dr. Kohl's treatment notes indicated improvement over time. "In light of

---

relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, part A, app. 1 § 12.00(C)(4).

[7] As an initial matter, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). *See also* 20 C.F.R. § 404.1527(d). Thus, neither the ALJ nor this Court need rely upon Dr. Kohl's conclusion that Horst is completely disabled.

such conflicting and internally contradictory evidence," the ALJ properly declined to give controlling weight to Dr. Kohl's letter as it was "conclusory and unsupported by the medical evidence." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Accordingly, the ALJ's decision not to give Dr. Kohl's statement controlling weight was supported by substantial evidence.

**B. Dr. Venier's RFC Assessment**

Appellant additionally argues that Dr. Venier's RFC assessment is consistent with other evidence in the record, including Dr. Kohl's letter, and therefore should have been afforded greater weight by the ALJ.

The ALJ explained why she was rejecting Dr. Venier's assessment as being inconsistent with the evidence in the record. Further, as the District Court correctly observed, evidence contrary to Dr. Venier's assessment is readily apparent in the ALJ's opinion, including Appellant's own testimony, Dr. Banco's statements, Dr. Kohl's treatment notes, the occupational therapist's observations that Horst was self-limiting during the FCE, and the RFC assessment performed by the state agency consultants.

Given the presence of such contrary evidence, the ALJ's decision to reject Dr. Venier's assessment is supported by substantial evidence.

**C. Appellant's Mental RFC Assessment**

Appellant's final objection is that the ALJ erred by inadequately considering Appellant's GAF scores from three episodes of decompensation, two of which followed the mental RFC assessment prepared by Dr. Siegel. Appellant claims that the ALJ should not have relied on Dr. Siegel's assessment because several periods of decompensation

9

occurred following Dr. Siegel's assessment. Therefore, Appellant requests remand so that a new mental RFC assessment may be performed, taking into account the additional periods of decompensation.

There is no indication that the ALJ rejected Appellant's mental health providers' assessments during the purported episodes of decompensation. The ALJ specifically discussed all of the episodes Appellant highlights, and noted in her opinion that she had considered the clinicians' subjective GAF scores. Even considering these episodes, the ALJ's conclusion that Horst did not experience repeated episodes of decompensation, as required by Listing 12.04, is supported by substantial evidence in the record. Although Horst experienced three episodes of decompensation within one year, no evidence indicates these episodes lasted for at least two weeks, as required by the Listing. To the contrary, the record reflects prompt improvement to the level of "moderate" following treatment for two of the incidents.[8] *See* 20 C.F.R. §404.1520a(c)(1) ("[In evaluating mental impairments, the ALJ] will consider . . . how [the claimant's] functioning may be affected by factors including . . . medication[] and other treatment.").

The ALJ considered the episodes of decompensation and low GAF scores Appellant cites. We conclude that substantial evidence supports her decision that these episodes and scores, considered with Horst's other mental impairments, fail to meet or equal Listing 12.04.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[8] The record does not include any follow up information from the third incident.

10