**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1190
_____

THOMASON WOODSON,
                              Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. No. 2-14-cv-06129)
District Judge:  Honorable Stanley R. Chesler

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2016

Before:  CHAGARES, GREENAWAY, JR., and RESTREPO, <u>Circuit Judges</u>.

(Filed: September 28, 2016)

_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Thomason Woodson appeals a District Court order affirming the Commissioner of Social Security's denial of his application for disability benefits under 42 U.S.C. § 405(g). For the following reasons, we will affirm the District Court's judgment.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. Woodson filed an application for disability insurance on June 21, 2011, alleging disability beginning on June 23, 2009. An Administrative Law Judge ("ALJ") held a hearing on January 30, 2013 and on March 1, 2013, held that Woodson "has not been under a disability, as defined in the Social Security Act, from June 23, 2009, through the date of this decision." Administrative Record ("A.R.") 18. The ALJ determined that Woodson suffered from severe impairments of alcohol dependence in remission (secondary cocaine abuse in remission), asthma, sleep apnea, congestive heart failure, obesity, back disorder, and arthritis in the knees. A.R. 14. But the ALJ found that none of these impairments, or a combination of the impairments, meets or equals any of the listed impairments in 20 C.F.R. Pt. 404. Subpt. P. App. 1. The ALJ found that Woodson has residual functional capacity ("RFC") to perform the full range of sedentary work, even if this RFC is insufficient to allow Woodson to perform his previous relevant work as a bridge operator. After considering Woodson's circumstances, the ALJ found there are a significant number of jobs in the national economy that he can perform. On July 31, 2014, the Appeals Council denied Woodson's request for review. Woodson filed suit, and the District Court affirmed the Commissioner's final decision in an order dated December 2, 2015. Woodson filed a timely appeal.

II.

The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g), and we have

appellate jurisdiction pursuant to 28 U.S.C. § 1291. "Our review is limited to

determining whether there was substantial evidence to support the Commissioner's

decision to deny benefits. Substantial evidence has been defined as more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir.

2010) (citations and quotation marks omitted).

III.

On appeal, Woodson makes the same four arguments he made to the District

Court: (1) the Commissioner's step three finding is beyond judicial review;[1] (2) the RFC

---

[1] We have previously explained that:

> The Social Security Administration has promulgated a five-step process for
> evaluating disability claims. First, the Commissioner considers whether the
> claimant is currently engaged in substantial gainful activity. If he is not, then the
> Commissioner considers in the second step whether the claimant has a 'severe
> impairment' that significantly limits his physical or mental ability to perform basic
> work activities. If the claimant suffers a severe impairment, the third inquiry is
> whether, based on the medical evidence, the impairment meets the criteria of an
> impairment listed in the 'listing of impairments,' which result in a presumption of
> disability, or whether the claimant retains the capacity to work. If the impairment
> does not meet the criteria for a listed impairment, then the Commissioner assesses
> in the fourth step whether, despite the severe impairment, the claimant has the
> residual functional capacity to perform his past work. If the claimant cannot
> perform his past work, then the final step is to determine whether there is other
> work in the national economy that the claimant can perform. The claimant bears
> the burden of proof for steps one, two, and four of this test. The Commissioner
> bears the burden of proof for the last step.

3

determination at step four was not supported by substantial evidence; (3) the ALJ did not evaluate Woodson's subjective complaints; and (4) the Commissioner did not sustain her burden at step five.

The District Court focused in on two "principal defects" in Woodson's action: (1) Woodson failed to deal with his burden of proof at the first four steps of the evaluation process, see Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987), and (2) his failure to address the harmless error doctrine, see Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009).

We have considered Woodson's arguments, and for the following reasons, we will affirm the District Court's determination.

A.

Woodson first argues that Commissioner's step three finding is beyond judicial review. He believes the ALJ did not consider whether his impairments in combination are medically equivalent to a listed impairment. In particular, Woodson argues that the ALJ's analysis was not individualized, especially with respect to his obesity. We disagree.

"At step three, an ALJ is charged with determining whether a claimant's impairment or combination of impairments meets, or medically equals, the criteria of an impairment listed in 20 C.F.R. §§ 404.1520(d) and 416.920(d)." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 502 (3d Cir. 2009). For meaningful judicial review, the ALJ must

Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000) (citations and quotation marks omitted).

4

provide a discussion of the evidence and an explanation of reasoning, id. at 504, but we do not "require the ALJ to use particular language or adhere to a particular format in conducting his analysis," Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

Woodson contends that the ALJ's analysis was merely "mentally assessed," Woodson Br. 8, because there was limited written analysis comparing his impairments with those in the listings. The ALJ, however, did conclude that Woodson did not satisfy the requirements of the Listing of Impairments, specifically 1.00 (Musculoskeletal System), 3.00 (Respiratory System), and 12.00 (Mental Disorders). Further, the ALJ repeatedly considered the role of Woodson's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines.

Woodson simply speculates about how his obesity might exacerbate other impairments — his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea, Woodson Br. 16. But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise. For instance, Dr. Rambhai Patel noted that Woodson walked without assistive devices and had a normal gait. A.R. 17. Dr. Patel also noted that Woodson had no acute distress, and the ALJ placed great emphasis on Dr. Patel's report. A.R. 17. Dr. Patel noted that the use of a CPAP machine has helped Woodson's sleep apnea. A.R. 262.

Woodson argues that the ALJ never explicitly addressed congestive heart failure under Listing 4.02. But the record evidence undercuts Woodson's position. It is true that

5

Woodson claimed a history of congestive heart failure and that he has been hospitalized twice. A.R. 262. But Dr. Patel found that a chest x-ray demonstrated cardiomegaly without congestive heart failure. A.R. 263. Woodson never received consistent treatment for any of these impairments. A.R. 17.

Woodson repeatedly states that his circumstances were not compared to the listings. But he never explains how, even if the ALJ's analysis was lacking, the deficiency was harmful to his claims. Woodson only says in very vague terms that an actual discussion of his impairments would lead to the conclusion that he was disabled at step three. This is unconvincing. Woodson has not affirmatively pointed to specific evidence that demonstrates he should succeed at step three. In other words, any error would be harmless. See Shinseki, 556 U.S. at 409 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); see also Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("[A] remand is not required here because it would not affect the outcome of the case.").

We hold that substantial evidence supports the ALJ's determination at step three, but even if any error occurred, it would be harmless.

B.

Next, Woodson challenges the ALJ's RFC determination at step four, arguing that it is not supported by substantial evidence. Woodson says there is no evidence to support the determination that he could perform "the full range of sedentary work." Woodson Br. 28. The ALJ is responsible for making the RFC finding based on all relevant medical and other evidence. See 20 C.F.R. §§ 404.1545(a), 404.1546(c).

6

The ALJ provided sufficient analysis for its RFC finding, which was supported by substantial evidence. As already explained, the ALJ cited to Dr. Patel's report, on which it placed "great weight." A.R. 17. Dr. Patel noted that Woodson walked with a normal gait. A.R. 17. Dr. Patel's report further explained: "He can do both fine and gross movements in both hands and the grip was normal. Gait, he was walking without any walking device and there was no[t] any gross sensory or motor deficit." A.R. 263. The ALJ explained that notes from rehab indicated few physical complaints. A.R. 16. It is true that Woodson claimed that he could not sit at a table packing two pound items because repetitive movement causes shortness of breath and chest pains. A.R. 16. But the ALJ did not find Woodson entirely credible, A.R. 16, even though Dr. Patel's report did explain that Woodson experiences shortness of breath with exertion, A.R. 262. Woodson has not pointed to any other specific medical evidence to support his position. In sum, the ALJ's analysis was supported by substantial evidence.

C.

Woodson also contends that the ALJ never seriously evaluated his subjective complaints about pain, but dismissed them with boilerplate language questioning Woodson's credibility. We disagree. Substantial evidence supports the ALJ's determination that Woodson's statements were "not entirely credible," A.R. 16, because Woodson's claims were contradicted by the medical evidence in the record. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."). As already mentioned, Dr. Patel's report stated that Woodson walked with a normal gait. Dr. Patel

7

reported that Woodson had no motor or sensory deficits, nor any acute distress. Other evidence reasonably supports the ALJ's credibility finding, including Woodson's daily routines, including doing household chores, and driving locally, A.R. 16-17. Substantial evidence supports the ALJ's decision regarding the credibility of Woodson's subjective statements.

## D.

Finally, Woodson argues that the Commissioner did not sustain its burden at step five because he had non-exertional impairments, such as respiratory impairments, which required the ALJ use a vocational expert. The ALJ found that Woodson has the RFC to perform a full range of sedentary work even though he must avoid environmental irritants and temperature extremes. Woodson is quite vague about what his specific non-exertional impairments are, referring again to respiratory issues and congestive heart failure. The District Court found that Woodson failed to establish a predicate non-exertional limitation that was omitted from the RFC analysis in step four. But even if he does have a non-exertional impairment, Woodson's argument that the Commissioner must use a vocational expert is not correct. Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) ("[W]e hold that if the Secretary wishes to rely on an SSR [Social Security Ruling] as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base."). Even if the ALJ could have better relied on a SSR or used a vocational expert, we hold that any error is harmless. See Rutherford, 399 F.3d at 553.

8

Substantial evidence supports the ALJ's determination that significant numbers of jobs exist in the national economy that Woodson can perform.

IV.

For the foregoing reasons, we will affirm the District Court's order.