NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-1843

———————————

MICHAEL EDWARD DAVERN,
                                        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-15-cv-00162)
District Judge: Honorable Christopher C. Conner

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
November 1, 2016

Before: HARDIMAN and SCIRICA, *Circuit Judges*,
and ROSENTHAL,[*] *District Judge*.

(Filed: November 7, 2016)

———————————

OPINION[**]

———————————

_____

        [*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

        [**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROSENTHAL, *District Judge*.

Michael Davern appeals the District Court's order affirming the Commissioner of Social Security's decision that he was not disabled under the Social Security Act, 42 U.S.C. §§ 401–433. We conclude that substantial evidence supported the Commissioner's decision, and we will affirm.

I.

Davern, who was 48 when the Commissioner denied disability in 2010, worked as a truck driver from 1988 to May 2004. In 2003, he injured his back carrying heavy items at work. He decreased his hours until he stopped working in 2005. In 2007, he settled a workers' compensation claim with his former employer for his 2003 injury. In 2004, Dr. Warren DeWitt, a family physician, and Dr. Laurence Schenk, an orthopedic surgeon, treated Davern's back pain with nerve-block injections, muscle relaxers, and pain medication. Both doctors concluded that at that time, he could lift up to 30 pounds, sit for up to 1 hour, stand for up to 10 minutes, and perform light duty for his employer.

In 2006, Dr. Schenk performed back surgery on Davern. Although Davern reported some numbness and restricted range at follow-up appointments, by June 2006, Dr. Schenk observed that he "showed excellent motion, surprisingly better than I had expected," and that he had "no hard neurologic defects." App. 290.

Although Davern could not return to a truck-driver job because it would routinely require heavy lifting, Dr. Schenk encouraged him to get vocational training and rehabilitation. Through 2007, Dr. Schenk continued to assess Davern as doing "quite well" radiographically but only "fair" clinically, even with pain management. App. 278–

2

79, 286. On July 27, 2007, Dr. Schenk found that Davern could stand for 15 minutes, sit for 4 hours, lift 20 pounds, and work a 40-hour week.

On June 25, 2008, Davern completed a Function Report form. He described his activities as including routine housework, driving, grocery shopping, and mowing his lawn. He could lift up to 20 pounds, stand or walk for 20 minutes, and walk up to a quarter of a mile. On July 3, 2008, Dr. Paul Buckthal, a neurologist, observed that Davern had a full range of neck, arm, elbow, and wrist motion, but restricted forward bending. In September 2008, Dr. Leo Potera, a physician from a Pennsylvania state agency, found that Davern could lift up to 20 pounds and could stand, walk, or sit for 6 hours out of an 8-hour workday.

In March 2009, Davern reported sudden intense back spasms. Dr. Schenk ordered an MRI, which revealed a minor disc bulge. Dr. Schenk prescribed medication. By July 2009, Dr. Schenk described Davern's back as "stable." App. 346.

Davern's insurance coverage ended December 31, 2009. On June 17, 2010, Dr. DeWitt completed a Residual Functional Capacity questionnaire. Dr. DeWitt wrote that Davern had lumbosacral degenerative disc disease and could not walk, sit, or stand any amount of time without interruption. By 2011, a screw from the 2006 surgery had broken in Davern's back. Dr. DeWitt issued another report in 2013, finding Davern disabled.

In July 2010, an ALJ held a hearing. Davern was present with counsel. The ALJ recognized that during the insured period, Davern was severely impaired as a result of degenerative disc disease of the lumbar spine. The ALJ nonetheless substantially discounted Dr. DeWitt's reports and credited Dr. Schenk's. Dr. DeWitt found Davern

3

disabled; Dr. Schenk found that Davern could do a limited range of light work during the period he was insured. Davern appealed the disability denial.

In September 2012, the District Court remanded the case to the ALJ because the record did not include a vocational expert's testimony. In May 2013, the ALJ held another hearing at which a vocational expert testified. Davern again appeared with counsel. Based on the expert's testimony, the ALJ found that there were appropriate jobs in significant numbers in the national economy that Davern could have performed. The ALJ again concluded that Davern was not disabled under the Social Security Act, 42 U.S.C. §§ 401–433.

Davern exhausted his administrative remedies and again sought the District Court's review of the Commissioner's decision under 42 U.S.C. § 405(g). The Magistrate Judge recommended affirming the ALJ's benefits denial. The District Court overruled Davern's objections to the Magistrate Judge's report, adopted the recommendation, and dismissed with prejudice. Davern timely appealed.

II.

The District Court had jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291.

We review disability decisions using the same standard as the District Court. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000). The Social Security Act, 42 U.S.C. § 405(g), states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."

4

Substantial evidence is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted). "[S]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion" is sufficient. *Id*. (quotation marks omitted). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted).

III.

"[T]o establish a disability under the Social Security Act, a claimant must demonstrate there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quotation marks omitted). The claimant must show the existence of a disability based on "such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).

The Social Security Commission uses a five-step sequence to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ considers whether the claimant: (1) is engaged in substantial, gainful work activity; (2) has severe medical impairments; (3) has an impairment that meets or equals one of the Social Security Administration's listed impairments; (4) can return to past relevant work; and, if not, (5) can perform other work consistent with his residual functional capacity. *Id*. Under the fifth step, the burden shifts to the Commissioner to show that jobs exist in substantial

numbers in the national economy that the claimant can perform. *Plummer*, 186 F.3d at 428.

Davern argues that the ALJ erred by: (1) rejecting or attributing little weight to certain conclusions of Dr. DeWitt; (2) failing to consider Davern's neck impairments in questioning the vocational expert; and (3) failing to consider evidence showing that Davern's impairments significantly worsened before his eligibility period ended in December 2009 and failing to consider evidence of neurological impairment. These arguments do not warrant the relief he seeks.

## A.

Davern claims that the ALJ erred when she found no severe medical impairment by giving controlling weight to the opinions of Dr. Schenk, Davern's orthopedic surgeon, and rejecting the conclusions of Dr. DeWitt, Davern's family physician. Although an ALJ need not cite every piece of relevant evidence in the record, *see Fargnoli*, 247 F.3d at 42, she must adequately explain her reasons for rejecting a treating physician's opinion, *see Sykes v. Apfel*, 228 F.3d 259, 266 n.9 (3d Cir. 2000). At the same time, a treating physician's opinion is not always or automatically entitled to controlling weight. *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011). The weight due a medical opinion depends on a variety of factors, including the degree to which relevant evidence supports the opinion and whether it is consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)–(4); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants— must make the ultimate disability and [Residual Functional Capacity] determinations.").

6

Davern argues that the ALJ did not properly evaluate the opinion evidence from Dr. DeWitt, Davern's long-term treating physician, and failed to consider Dr. Schenk's 2009 reports documenting deterioration in Davern's back condition. The record reveals, however, that the ALJ adequately considered Dr. DeWitt's opinions, noted where she disagreed, and explained why. The ALJ reasoned that Dr. Schenk, as the treating orthopedic surgeon, was the specialist on Davern's lumbar spine problems, and she applied the general rule that "more weight is given to the opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(c)(5). The ALJ concluded that Dr. Schenk's opinions were consistent with, and substantiated by, the record medical evidence and Davern's own reports. Dr. Schenk's opinions emphasized objective measures of physical limits; Dr. DeWitt's assessments substantially relied on Davern's subjective self-reported symptoms and pain. Although the ALJ did not specifically cite Dr. Schenk's treatment notes from March and July 2009, she concluded that Dr. Schenk's reports consistently showed that Davern was not so impaired that he could not seek employment. Dr. Schenk noted in July 2009 that Davern's "overall condition is unchanged" with "no gross neurological deficits" and a "stable back." These observations are consistent with the ALJ's findings. App. 346.

We conclude that the ALJ was entitled to give greater weight to Dr. Schenk's opinions than to Dr. DeWitt's and that the record contained substantial evidence supporting the ALJ's findings, including consistent medical assessments and Davern's own reports of his activities. We affirm the ALJ's finding that Davern could perform light work throughout the insured period.

B.

Davern's second argument is that the ALJ failed to include his neck limitations in the hypothetical questions she asked the vocational expert. The ALJ asked the vocational expert to consider an individual between the ages of 42 and 48 (Davern's age during the eligibility period) with a GED and past work as a tractor-trailer truck driver who could lift 20 pounds occasionally, stand 15 minutes at a time, sit 4 hours at a time, and work a 40-hour week. The vocational expert identified parking-lot attendant, ticket vendor, and survey worker as jobs this individual could perform. Davern argues that the vocational expert's testimony cannot be considered substantial evidence because the hypothetical question did not include medically undisputed evidence of his neck impairments. *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

Davern raises this argument for the first time on this appeal. In the District Court, Davern asserted that the ALJ did not account for his neck limitations, but he did not specifically challenge the vocational expert's testimony. Davern appears to have waived this issue. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994) ("This court has consistently held that it will not consider issues that are raised for the first time on appeal."); *see also*, *e.g.*, *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d. Cir. 2010) (applying waiver of argument rule to a district court's decision affirming the Commissioner's benefits denial).

Even if Davern did not waive the argument, the vocational expert's testimony was substantial evidence that the ALJ properly could consider. Davern relies on *Burns*, in which an ALJ posed a hypothetical question to a vocational expert before sending the

8

claimant to be examined for intellectual impairments. 312 F.3d at 120–21. Rather than convene a new hearing with the vocational expert taking account of the intellectual-impairment report, the ALJ relied on the vocational expert's earlier testimony to conclude that the claimant was not disabled. *Id*. The appellate court remanded to the ALJ "so that a complete hypothetical could have been posed to the vocational expert." *Id*. at 123–24. But here, unlike *Burns*, the ALJ had and used the record when questioning the vocational expert. The ALJ's questions accounted for Davern's neck limitations in light of the medical records documenting his cervical range of motion and finding that his upper-extremity strength and sensation were intact. We see no basis for relief on this ground.

C.

Finally, we address Davern's argument that substantial evidence did not support the ALJ's decision. Davern repeats his argument that the evidence showed his condition worsening in late 2009, before the eligibility period ended. He argues that the ALJ improperly relied on reports that were too remote from his last-insured date in evaluating the severity of his impairment. Davern argues that because these reports cannot be substantial evidence, the ALJ's decision lacked the required support. Davern disputes the ALJ's finding that he did not suffer from severe neurological impairments, dizziness, or sleepiness. He challenges the ALJ's reliance on two reports: a February 2006 risk assessment in which Davern reported that he could still do moderately heavy labor; and a June 2008 function report in which Davern reported that he could drive, shop for groceries, mow the lawn, and regularly do routine household chores. Davern argues that

9

the ALJ also improperly relied on a 2008 report of his telephone interview with an agency field officer to assess his mental alertness.

A federal court's substantial-evidence review is "quite limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). A court may not weigh the evidence or substitute its own findings for the Commissioner's. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986). Davern's arguments amount to a request to reweigh the evidence and review the Commissioner's findings and decision de novo. But the findings were consistent with this Court's recognition that "[a]lthough any statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler*, 667 F.3d at 363 (internal quotation marks and citation omitted). Both the 2006 and 2008 reports were issued well after Davern claimed to be disabled in 2004. Both reports included Davern's own statements that he could continue to do light to moderate work. The ALJ properly took a broad view of the record to determine the credibility of Davern's own descriptions of his ailments to his treating physician and surgeon. Davern is correct that Dr. Schenk's 2009 treatment notes, as well as other physicians' notes in 2008, documented Davern's reports of numbness. However, the ALJ properly considered all evidence of reported numbness under the degenerative disc disease diagnosis, and was free to credit Dr. Schenk's July 2009 report which stated Davern had "no gross neurological deficits" in determining that any numbness did not substantially limit Davern. App. 393, 346.

10

Substantial evidence supports the ALJ's findings and she applied the proper legal standards in concluding that Davern was not disabled.  There is no basis for reversal or remand.

IV.

We will affirm.